THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARL GIULI,

    Plaintiff,

    v.

JOSEPH MONTAGNA, et al.,

    Defendants.

3:23-CV-1785
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION

Defendants' Motion to Exclude Plaintiff's Use of Force Expert (Doc. 23) is pending before the Court. With the Motion, Defendants seek to preclude Thomas Shea, Plaintiff's proffered use of force expert, on several grounds. In their Motion, Defendants state that Dr. Shea's expert report is not appropriately considered by the jury on several grounds: 1) he was a municipal officer rather than a state police trooper as are Defendants in this case (*id.* ¶ 5); 2) he uses "amorphous methodologies with no reliability" (*id.*); 3) he "invades the province of the jury by declaring that excessive force was used and the testimony of the troopers is not credible" (*id.*); and 4) his opinions about trooper training are not supported (*id.*).

The Court held a Daubert Hearing on the admissibility of Plaintiff's use of force expert on December 4, 2025. (*See* Doc. 55.) Defendants have now filed their supplemental

brief in support of the Motion to Exclude Plaintiff's Use of Force Expert (Doc. 23). (Doc. 56.) Defendants now assert that

> Plaintiff should be precluded from calling Thomas Shea as an "expert" for numerous reasons, including because: his report contains inaccuracies and factual errors that cast serious doubt on the reliability of his opinion; his testimony will not resolve a factual dispute; he bases his opinion on inappropriate credibility determinations, and; he seeks to provide an opinion on the ultimate conclusion of reasonableness. Plaintiff's attempts to offer his opinion in particularized categories also fail.

(Doc. 56 at 1.)

In deciding the pending Motion, the Court focuses on Defendants' post-hearing arguments. Having considered the parties arguments on the *Daubert* issue raised in their briefs and at the December 4, 2025, *Daubert* Hearing, the Court concludes that Dr. Shea is qualified to testify but his testimony will be limited in accordance with this Memorandum Opinion.

## II. BACKGROUND

The Court assumes the parties' familiarity with the facts and will only recount the facts relevant to the instant motion in limine. Defendants are Pennsylvania State Police Troopers accused of using excessive force when they served a 302 warrant on Plaintiff based on his wife's reports that Plaintiff was experiencing a mental health crisis. (Complaint, Doc. 1-2.) While serving the warrant, an altercation occurred in Plaintiff's house involving Plaintiff and Pennsylvania State Police Troopers Joseph Montagna and Christopher Teetsel. Plaintiff sustained injuries in the course of the altercation which he

alleges are due to the use of excessive force by Troopers Montagna and Teetsel. Details regarding what transpired at Plaintiff's house are in dispute.

### III. STANDARD OF REVIEW

In a motion in limine, the court "rule[s] in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Nevertheless, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F. Supp. 3d at 406. "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012). Indeed, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of

3

questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). Moreover, "*pretrial* Rule 403 exclusions should rarely be granted ... [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original).

## IV. ANALYSIS

As set out above, Defendants now contend that Plaintiff's Use of Force Law Enforcement expert's opinion should be precluded because

> his report contains inaccuracies and factual errors that cast serious doubt on the reliability of his opinion; his testimony will not resolve a factual dispute; he bases his opinion on inappropriate credibility determinations, and; he seeks to provide an opinion on the ultimate conclusion of reasonableness. Plaintiff's attempts to offer his opinion in particularized categories also fail.

(Doc. 56 at 1.)

Federal Rule of Evidence 702, governs the admissibility of expert witnesses.

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

4

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

> The Court of Appeals for the Third Circuit has explained that
>
> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. [*In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 741-743 (3d Cir. 1994) ("*Paoli II*")] (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, (1993)). Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." *Id.* Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his on her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." *Paoli II*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786). Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." 509 U.S. at 591–92.
>
> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert*, 509 U.S. at 592, 113 S.Ct. 2786 ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003).

5

A. **Reliability**

Defendants first assert that Dr. Shea's report contains inaccuracies and factual errors that cast serious doubt on the reliability of his opinion. (Doc. 56 at 3.)

*Daubert's* reliability analysis requires a Court to consider, among other things:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the methods have been put.

*In re Paoli*, 35 F.3d at 742 n.8. However, *Daubert* did not set out a definitive checklist or test, and no single factor was deemed dispositive. *Daubert*, 509 U.S. at 593. The inquiry's "overarching subject is the scientific validity and thus the evidentiary relevance and reliability - of the principles that underlie a proposed submission." *Id.* at 594-595. "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.*

"[T]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012) (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999)). The expert's testimony must also "'fit,' in that it must assist the trier of fact." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000) (quoting *In re Paoli*, 35 F.3d at 744). The *Daubert* standard "is not intended

to be a high one, nor is it to be applied in a manner that requires the plaintiffs 'to prove their case twice—they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.'" *Id.* (quoting *In re Paoli*, 35 F.3d at 74).

In a case where the plaintiff offered an expert in "law enforcement practices," the court noted pertinent considerations on the issue of reliability:

> In cases like this one "where an expert is proffered to testify regarding non-scientific matters, '[t]he relevant reliability concerns [will] focus upon personal knowledge [and] experience' of the witness and the methodology used will be applying that experience to the facts of the case." *See Jackson v. City of Pittsburgh*, No. 07-111, 2010 WL 3222137, at \*9 (W.D. Pa. Aug. 13, 2010) (quoting *Roberson v. City of Philadelphia*, No. 99-3574, 2001 WL 210294, at \*5 n.10 (E.D. Pa. Mar. 1, 2001) (internal quotation omitted)); *see also* Fed. R. Evid. 702, Advisory Comm. Notes, 2000 Amd. (stating that "when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. The method used by the agent is the application of extensive experience to analyze the meaning of conversations."). Accordingly, when testimony is proffered regarding non-scientific matters, the expert's qualifications and experience set the boundaries for his or her testimony.

*Ezeibe v. Chivers*, Civ. A. No. 1:19-CV-00189, 2022 WL 882732, at \*4 (M.D. Pa. Mar. 24, 2022).

Defendants maintain that Dr. Shea's reliability is doubtful on several specific grounds:

> Shea did not use the New Jersey Law Enforcement Handbook in making his determinations despite his report saying that he did. *Daubert Hearing*

7

*Transcript* at 29:2-12. Shea's report also lists that he used five publications but then only lists four. *Id.* at 30:11-21. Critically, Shea's report states that it was Defendant Montagna who pushed Plaintiff Giuli up against the refrigerator in the course of this incident; there is no allegation of this in the record,[1] and Shea offered inconsistent explanations for why this factual averment appears in his report. *Id.* at 38:20-25, 39:1-22.[2] Shea also stated that he credited Plaintiff Giuli's version of events as credible in offering his opinion while simultaneously stating that he didn't take anything Plaintiff said into account. *Id.* at 40:25, 41:1-5. Simply put, this "rush job," [*Daubert Hearing Transcript* at 30:20] to use Shea's words, led to a report that does not accurately consider the facts of the case and has enough errors that it is impossible to conclude his opinions could flow from the facts or any of the publications on which Shea bases his opinions.

(Doc. 56 at 3-4.)

The Court acknowledges that Dr. Shea's report is problematic for multiple reasons, including those cited. However, focusing on Dr. Shea's knowledge and experience summarized at the *Daubert* Hearing (*Daubert* Hr'g Tr. 5:18-14:2 (Doc. 55)) and set out in his Curriculum Vitae (Doc. 28-1), the Court finds that Dr. Shea has a breadth of knowledge and experience in police practices and use of force which render him qualified to testify as an expert. *See, e.g., Ezeibe*, 2022 WL 882732, at *4. The inconsistencies found in his report

---

[1] In a footnote, Defendants add: "In fact, Plaintiff's guilty plea on his related criminal case indicates the opposite." (Doc. 56 at 4 n.1.)

[2] Defendants provide the following additional information on this issue in a footnote:

Shea initially seemed to indicate that he surmised this by the nature of the incident as "mutual combat." [*Daubert Hearing Transcript*] at 39:4-7. When explicitly asked where in the record this was established, Shea said he did not know and then said that one of the defendants stated that Plaintiff's leg had caught under the refrigerator. *Id.* at 39:8-16. When asked if that is why he believed it was Defendant Montagna who pinned Plaintiff Giuli rather than the reverse, Shea said "I don't know." *Id.* at 39:19-20.

(Doc. 56 at 4 n.2.)

and other matters that relate to the reliability of his opinions are properly the subject of cross-examination to the extent he is allowed to testify on those matters at trial.

## B. Credibility Determinations

Defendants next argue that Dr. Shea's opinions regarding credibility are inappropriate. (Doc. 56 at 4-5 (citing *Timko v. Traugh*, Civ. A. No. 4:22-CV-1195, 2024 WL 4351458, at *5 (M.D. Pa. 2024)).)

As a general matter, "'[t]he jury has the *exclusive* function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in evidence, and reaching ultimate conclusions of fact.'" *Betz v. Temple Health Sys.*, 659 F. App'x 137, 140–41 (3d Cir. 2016) (emphasis added) (quoting *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 959 (10th Cir. 2002) (internal quotation marks omitted)). Therefore, "pursuant to Rule 702, it is generally inappropriate for an expert witness to offer an opinion on the credibility of fact witnesses." *Timko*, 2024 WL 4351458, at *3 (M.D. Pa. Sept. 30, 2024) (citing *Withrow v. Spears*, 967 F. Supp. 2d 982, 998–99 (D. Del. 2013); *Suter v. Gen. Accident Ins. Co. of Am.*, 424 F. Supp. 2d 781, 793 (D.N.J. 2006); *Hill v. NSB Niederelbe Schiffahrtsges.MBH & Co.*, Civ. A. No. 02–2713, 2004 WL 569908, at *1 (E.D. Pa. Mar. 5, 2004); *Griggs v. BIC Corp.*, 844 F. Supp. 190, 201 (M.D. Pa. 1994), *aff'd* 37 F.3d 1486 (3d Cir.1994)).

The Court agrees with Defendants that "the case presented to the Court is one of credibility—ultimately the jury will have to determine if Defendants maliciously assaulted Plaintiff or if they used appropriate force after he attacked them." (Doc. 56 at 4.) Regarding the different versions of events offered by Plaintiff and Defendants, Dr. Shea confirmed at the Daubert Hearing that the parties' "stories differ in some aspects" and that he "intend[ed] to offer an opinion to the jury as to who they should believe or find credible." (*Daubert* Hr'g Tr. 21:5-11.) Dr. Shea also acknowledged that he made other credibility determinations in the course of his report, including those related to the cause of Plaintiff's injuries, and he believed that was "a typical purview of a use of force expert." (*Id.* 39:23-42:11.)

Pursuant to the caselaw set out above, Dr. Shea is precluded from offering any opinions on credibility at trial. Plaintiffs' counsel is cautioned that the Court's preclusion of testimony regarding the credibility of another witness will be strictly enforced.

## C. Specific Opinions

Defendants' final argument is that the specific opinions Plaintiff's counsel identified at the *Daubert* Hearing as those which Plaintiff intends to introduce at trial should be excluded as unreliable. (Doc. 56 at 5.) Plaintiff's counsel stated that he intended to elicit several opinions from Dr. Shea at trial:

> whether the actions of the defendants complied with your education, training, and experience in the use of force, complied with . . . prevailing national standards in the field of use of force, complied with the Pennsylvania Mental Health Procedures Act, complied with Pennsylvania State Police policy,

> sufficiently deescalated the situation or attempted to de-escalate the situation; and then, finally, the last opinion would be, based on your training and experience, was it reasonable and necessary, with no mention of the word, excessive, no mention of the case law, no mention of the factors.

(*Daubert* Hr'g Tr. 56:25-57:10.)

The Court agrees that many of the opinions which Plaintiff proposes to elicit at trial do not satisfy *Daubert* requirements or are contrary to Third Circuit caselaw. First, the Court finds that several of the proposed opinions do not satisfy *Daubert's* "reliability" and "fit" requirements.

### 1. Compliance with Non-Relevant Standards

Defendants assert that Plaintiff seeks to admit Dr. Shea's opinion regarding Defendants' compliance with non-relevant standards. (Doc. 56 at 6.) The Court finds that Plaintiff has not shown that "prevailing national standards in the use of force" are relevant in this case or that the specifically identified *President's Task Force on 21st Century Policing Final Report* and *Law Enforcement Best Practices: Lessons from the Field* are relevant. (Daubert Hr'g Tr. 31:1-8, 57:2-3.)

In *Wood v. Showers*, Civ. A. No. 4:16-CV-1923, 2019 WL 5847836 (M.D. Pa. Aug. 6, 2019), the court found that "the international model for law enforcement's model use of force does not fit the jury's need to know the PSP [Pennsylvania State Police] policy on the use of force." *Id.* at *2. On appeal, a panel of the Circuit Court found that the expert's report did not establish the reliability of the policies promulgated by the International Association of Chiefs of Police or the National Institute of Justice because the report "did not describe

11

those organizations, the process by which they developed their standards, or the general acceptance of those standards." *Wood v. Showers*, 822 F. App'x 122, 124–25 (3d Cir. 2020).

The same is true in this case regarding Dr. Shea's reliance on *The President's Task Force on 21st Policing Final Report* and *Law Enforcement Best Practices: Lessons from the Field*. (*See* Doc. 28-2 at 5-6.) Therefore, Dr. Shea is precluded from relying on these publications and testifying about standards promulgated therein, i.e., the goal of "***avoid[ing] the use of force if at all possible***, even when it is allowed by law and policy" identified in *The President's Task Force on 21st Century Policing* and the "principles of de-escalation" identified in *Law Enforcement Best Practices*, (Doc. 28-1 at 6 (emphasis in *Shea* Report).) Similarly, Dr. Shea is precluded from testifying about Plaintiff's generically identified intent to elicit an opinion on "prevailing national standards in the field of use of force." (Daubert Hr'g Tr. 57:2-3.)

2. *Pennsylvania Mental Health Procedures Act*

Plaintiff's intent to elicit an opinion regarding compliance with the Pennsylvania Mental Health Procedures Act ("Act") is problematic under "fit" considerations pursuant to *Daubert*. As set out above,

> Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." 509 U.S. at 591–92.

12

*Schneider*, 320 F.3d at 404.  Although Plaintiff was being served a "302 warrant" – meaning a warrant pursuant to section 302 of the Pennsylvania Mental Health Procedures Act -- Plaintiff has not shown the relevance of the Pennsylvania Mental Health Procedures Act to the charge against the Pennsylvania State Troopers executing the warrant and has not shown how testimony about provisions in the Act would assist the trier of fact as required under *Daubert*.  Dr. Shea's testimony about the Act at the *Daubert* Hearing made no direct connection between the Act and the facts of this case, opining generally that "what he took" from the Act is that "you have to take extra, extra precautions to communicate more thoroughly.  You have to be more patient than you normally would during a call because lots of people going through these crisis events aren't aware . . . of their actions and decisions." (*Daubert* Hr'g Tr. 26:7-24.)  This is not a State Police policy, it is not presented as a policy statement found in the Act or one that is applicable to officers issuing a 302 warrant.  Therefore, the Court finds that reference to the Act is properly precluded based on relevance and fit grounds.

### 3. *Compliance with Pennsylvania State Police Policy*

Defendants next take issue with Plaintiff's proposed opinion as to whether Defendants were compliant with Pennsylvania State Police policy.  (Doc. 56 at 9.) Defendants specifically assert that Dr. Shea "should be prevented from testifying as to whether or not Defendants complied with the PSP policy, as he has not established his opinion is any more reliable than a lay witness simply reading the Pennsylvania State Police

policies and opining on whether or not they were followed in this case." (*Id.*)  As set out above, the Court finds that Dr. Shea has a breadth of knowledge and experience in police practices and use of force which render him qualified to testify as an expert as limited herein.  *See supra* p. 8. Further, Pennsylvania State Police policies are relevant for purposes of this case and an expert's review of pertinent policies will assist the trier of fact.  *Schneider*, 320 F.3d at 404.

### 4. Compliance with De-escalation Policy

Defendants relatedly contend that it does not appear that Dr. Shea based his opinion regarding de-escalation on Pennsylvania State Police policy; "rather he based his opinion on 'Law Enforcement Best Practices: Lessons from the Field . . . [and] only on Plaintiff's version of events as he made a credibility determination regarding the Defendants' narrative." (Doc. 56 at 9-10.)  For the reasons discussed above, an opinion based on *Law Enforcement Best Practices* is precluded and an opinion based on a credibility determination is also precluded.  *See supra* pp. 9-10, 12.

### 5. Use of Excessive Force Language

Finally, Defendants object to the Plaintiff's intention to elicit Dr. Shea's opinion on whether the force used was "reasonable and necessary, with no mention of the word, excessive, no mention of the case law, no mention of factors." (Doc. 56 at 9; *Daubert* Hr'g Tr. 57:6-10.)  The Court concludes that Dr. Shea is appropriately precluded from use of the words "reasonable" or "unreasonable" in rendering his opinion regarding excessive force.

As stated in *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217–18 (3d Cir. 2006),

> The District Court has discretion to determine whether expert testimony will help the trier of fact. *United States v. Agnes*, 753 F.2d 293, 303 (3d Cir.1985), *abrogated on other grounds by Smith v. Borough of Wilkinsburg*, 147 F.3d 272 (3d Cir.1998). In utilizing that discretion, however, the District Court must ensure that an expert does not testify as to the governing law of the case. Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that "embraces an ultimate issue to be decided by the trier of fact," an expert witness is prohibited from rendering a legal opinion. *United States v. Leo*, 941 F.2d 181, 195–96 (3d Cir.1991). Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury. *First National State Bank v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir.1981) (per curiam).
>
> Notwithstanding this admonition, the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties.

*Berckeley Inv. Grp., Ltd.*, 455 F.3d at 217–18. This principle was considered in the context of an expert's opinion on excessive force in *Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013):

> The boundaries of Rule 704 are often hazy, so our Circuit has established that expert testimony becomes impermissible if the expert's opinion would interfere with the district court's "pivotal role in explaining the law to the jury". *Berckeley*, 455 F.3d at 217. In his testimony, Baranowski [the expert witness] essentially opined that Deputy Moorman's actions were unreasonable and about what a reasonable officer would have done. In a § 1983 suit, "reasonableness" is practically interchangeable with "excessiveness", so Baranowski might as well have opined that Deputy Moorman's use of force was excessive.
>
> Accordingly, in navigating this hazy Rule 704 line, the District Court did not abuse its discretion in excluding those parts of Baranowski's testimony which opined on the reasonableness of Deputy Moorman's actions.

*Patrick*, 536 F. App'x at 258.

"[A]ll claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . . " *Graham v. Connor*, 490 U.S. 386, 395 (1989). This Fourth Amendment "'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The Third Circuit's Model Civil Jury Instruction regarding Section 1983 Excessive Force repeatedly uses the words "reasonable" and "unreasonable":

> In determining whether [defendant's] acts constituted excessive force, you must ask whether the amount of force [defendant] used was the amount which a *reasonable* officer would have used in [making the arrest] [conducting the stop] under similar circumstances. . . . The *reasonableness* of [defendant's] acts must be judged from the perspective of a *reasonable* officer on the scene. The law permits the officer to use only that degree of force necessary to [make the arrest] [conduct the stop]. . . . If the force [defendant] used was *unreasonable*, it does not matter whether [defendant] had good motivations. And an officer's improper motive will not establish excessive force if the force used was objectively *reasonable*. What matters is whether [defendant's] acts were objectively *reasonable* in light of the facts and circumstances confronting the defendant.

3d Cir. Model Civil Jury Instruction 4 (emphasis added).

The foregoing jury charge shows that the concept of reasonableness is central to the Court's explanation of the relevant law on excessive force to the jury in this case. Therefore, testimony by Dr. Shea regarding reasonableness "would usurp the District Court's pivotal role in explaining the law to the jury." *Berckeley*, 455 F.3d at 217.

Therefore, as approved in *Patrick*, 536 F. App'x at 258, the Court will preclude Dr. Shea from testifying on the reasonableness of Defendants' actions regarding the use of force.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude Plaintiff's Use of Force Expert (Doc. 23) is granted in part and denied in part. Defendants' Motion is denied insofar as Defendants seek to exclude Dr. Shea's testimony in this case in its entirety. (*See* Doc. 23 at 3.) The Motion is granted to the extent that Dr. Shea is precluded from offering testimony as set out in the body of this Memorandum Opinion. *See supra* pp. 9-17.[3] A separate Order is entered.

Robert D. Mariani
United States District Judge

---

[3] Dr. Shea may not offer any opinions on credibility. *See supra* pp. 9-10. Dr. Shea may not rely on, or testify about standards set out in, *The President's Task Force on 21st Century Policing, Law Enforcement Best Practices: Lessons from the Field*, or "prevailing national standards in the field of use of force." *See supra* pp. 11-12. Dr. Shea is precluded from referencing the Pennsylvania Mental Health Procedures Act. *See supra* pp. 12-13. Dr. Shea may not testify on the reasonableness of Defendants' actions regarding the use of force.